IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT KING,              :
                            :
        Petitioner,        :
    v.                       :     Civil Action No. 17-1045-CFC
                            :
CLAIRE DEMATTEIS, Commissioner,  :
Delaware Department of Corrections,  :
ROBERT MAY, and            :
ATTORNEY GENERAL OF THE      :
STATE OF DELAWARE,          :
                            :
        Respondents.[1]   :

---

## MEMORANDUM OPINION

Christopher S. Koyste. Attorney for Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

September 30, 2020
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis has replaced former Commissioner Perry Phelps, and Warden Robert May has replaced former Warden Dana Metzger, original parties to the case. See Fed. R. Civ. P. 11(d).

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Robert King ("Petitioner"). (D.I. 2)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 16; D.I. 21)  For the reasons discussed below, the Court will dismiss the Petition and deny the relief requested.

## I.    BACKGROUND

On November 5, 2012, Petitioner was indicted and charged with drug dealing, possession of marijuana, third degree conspiracy, and possession of drug paraphernalia.  (D.I. 16 at 1)  On June 4, 2013, Petitioner pled guilty to drug dealing. (D.I. 16 at 1)  The Superior Court of Delaware sentenced Petitioner to eight years at Level V incarceration, with credit for 152 days, suspended after three years and completion of the Green Tree drug treatment program for reduced levels of supervision. (D.I. 16 at 1-2)  Petitioner did not file a direct appeal.

On December 31, 2013, Petitioner filed a *pro se* motion to modify his sentence. The Superior Court denied the motion on February 19, 2014.  (D.I. 19-6 at 4)  Petitioner did not appeal that decision.

On May 16, 2014, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 19-6 at 4; D.I. 19-8)  The Superior Court appointed the Office of Conflict Counsel to represent Petitioner.  (D.I. 19-6 at 1)  On March 16, 2016, Petitioner's counsel filed an amended Rule 61 motion, asserting that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to inform Petitioner prior to the entry of his plea about an evidence

mishandling scandal at the Office of the Chief Medical Examiner ("OCME").  (D.I. 19-10)
Petitioner also contended that his lack of knowledge about the OCME evidence
mishandling was material to his decision to plead guilty and, therefore, his guilty plea
was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970).  *Id.*  The
Superior Court denied the Rule 61 motion on November 16, 2016.  *See State v. King*,
2016 WL 6820638 (Del. Super. Ct. Nov. 6, 2016).  The Delaware Supreme Court
affirmed that decision on June 28, 2017.  *See King v. State*, 166 A.3d 936 (Table), 2017
WL 2806268 (Del. June 28, 2017).

In July, 2017, Petitioner filed the timely § 2254 Petition presently pending before
the Court.

### A. OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling scandal is
set forth below:

> In February 2014, the Delaware State Police ("DSP") and the
> Department of Justice ("DOJ") began an investigation into
> criminal misconduct occurring in the Controlled Substances
> Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to
> the OCME for testing had been stolen by OCME employees
> in some cases and was unaccounted for in other cases.
> Oversight of the lab had been lacking, and security
> procedures had not been followed.   One employee was
> accused of "drylabbing" (or declaring a test result without
> actually conducting a test of the evidence) in several cases.
> Although the investigation remains ongoing, to date, three
> OCME employees have been suspended (two of those
> employees have been criminally indicted), and the Chief
> Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees
> tampered with drug evidence by adding known controlled
> substances to the evidence they received for testing in order
> to achieve positive results and secure convictions.  That is,

2

> there is no evidence that the OCME staff "planted" evidence
> to wrongly obtain convictions. Rather, the employees who
> stole the evidence did so because it in fact consisted of illegal
> narcotics that they could resell or take for personal use.

[*Ira*] *Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II.   STANDARD OF REVIEW

When a state's highest court has adjudicated a federal habeas claim on the

merits, the federal court must review the claim under the deferential standard contained

in 28 U.S.C. § 2254(d).  A claim has been "adjudicated on the merits" for the purposes

of § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*,

570 F.3d 105, 115 (3d Cir. 2009).  Under  § 2254(d), federal habeas relief may only be

granted if the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of

the United States," or the state court's decision was an unreasonable determination of

the facts based on the evidence adduced in the state court proceeding.  *See* §

2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*,

250 F.3d 203, 210 (3d Cir. 2001).  This deferential standard of § 2254(d) applies even

"when a state court's order is unaccompanied by an opinion explaining the reasons

relief has been denied."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As Court

explained in *Richter*, "it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the

contrary."  *Id*. at 99.

Finally, a federal court must presume that the state court's determinations of

factual issues are correct.  *See* § 2254(e)(1); *see also Appel*, 250 F.3d at 210.  This

3

presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Following the discovery of the evidence mishandling at the OCME, Delaware's Office of Defense Services ("ODS") and conflict counsel filed more than 700 Rule 61 motions on behalf of numerous defendants convicted of drug-related charges.  Since the underlying legal issues raised in these motions were largely the same, the Superior Court crafted a procedure for efficiently and logically addressing the majority of the Rule 61 motions.  As the Court explained in *State v. Irwin*:

> The investigation, although still ongoing, has thus far resulted in three OCME employees being suspended, two of those employees being indicted in this Court, and the firing of the Chief Medical Examiner.  However, the full extent of the criminal conduct at the OCME drug lab is still unknown.
>
> The issues uncovered, and those anticipated to be revealed as the investigation continues, have prompted hundreds of motions from indicted and convicted defendants at all stages of the criminal process.  In an attempt to logically and procedurally address these motions, the Court decided to first attempt to address cases that were awaiting trial.  To do so, the Court reached out to the State and the defense bar to schedule hearings on pending matters within that category. With the professional coordination of all parties involved, the Court has held two hearings to gather evidence regarding the events at the OCME drug lab.  The first hearing, which started on July 8, 2014, involved defendants Dilip Nyala ("Nyala") and Michael Irwin ("Irwin").  The second hearing, which was held in late August 2014, involved defendants Hakeem Nesbitt

4

("Nesbitt") and Braaheim Reed ("Reed"). During that August hearing, testimony uncovered that evidence in the Reed case had a significant discrepancy between what the officers seized and what was actually tested at the independent lab retained by the State. As a result, the State entered a *nolle prosequi* of the Reed case. Therefore, this Court's decision relates only to the Nesbitt, Irwin and Nyala cases. By deciding these three cases the Court's intent is to establish a framework for addressing the volume of cases awaiting trial for drug offenses that at one time were stored at the OCME drug lab. The facts surrounding these specific cases involve drug evidence that was sent to the OCME drug lab for testing but was never actually tested by a chemist at that location. **However, it is expected that the Court's ruling will also have an impact on cases where the drugs were tested by the OCME drug lab, and potentially the hundreds of petitions that have been filed pursuant to Superior Court Criminal Rule 61.**

Defendants are challenging the State's ability to use drug evidence at trial through filing various motions *in limine*. The Court will first highlight the specific factual and procedural background of each case, summarize guidance found from other jurisdictions facing similar drug lab improprieties, decide the principles to be used for cases involving drug evidence sent to the OCME drug lab and finally apply those principles to each specific defendant.

*State v. Irwin*, 2014 WL 6734821, at *1–2 (Del. Super. Ct. Nov. 17, 2014)(emphasis

added) (footnote omitted). Similarly, in *State v. Miller*, the Superior Court explained:

The instant motions are just a small sample of the influx of filings made by and on behalf of over 700 criminal defendants following what has come to be known as "the OCME scandal." **The ODS hand-selected the motions in these eight cases for the Court to decide and, because motions filed by the ODS in other cases are identical to those involved here, its decision in these matters should resolve many of the pending Rule 61 motions before the Court.**

*State v. Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017) (emphasis

added). Two other pivotal decisions often cited by the Delaware state courts when

adjudicating the numerous other Rule 61 motions based on the OCME evidence

5

mishandling scandal are *[Ira] Brown v. State*, 108 A.3d 1201 (Del. 2015) and

*Aricidiacono v. State*, 125 A.3d 677 (Del. 2015).

Petitioner presented in his own Rule 61 motion the same two inter-related

arguments presented by many of the other 700 defendants: (1) the State violated *Brady*

*v. Maryland* when it failed to disclose the drug evidence scandal at the OCME during

Petitioner's plea process in 2013 (D.I. 15-9 at 31-42); and (2) Petitioner's lack of

knowledge about the OCME drug evidence scandal was material to his decision to

plead guilty, thereby rendering his guilty plea involuntary pursuant to *Brady v. United*

*States*. (D.I. 15-9 at 42-47)

In his Rule 61 proceeding, Petitioner attempted to distinguish his case from the

other OCME evidence mishandling cases with the following argument:

> Recent Delaware Supreme Court cases addressing the
> OCME scandal have primarily focused on the impact the
> scandal has had on plea cases. However, none of them
> address whether the State violated *Brady* [*v. Maryland*] when
> a defendant accepted a plea on the eve of trial with the
> potential jury wait[ing] to be selected. In *Ira Brown [v. State*,
> 108 A.3d 1201, 1204-05 (Del. 2015)], the Delaware Supreme
> Court, relying on *United States v. Ruiz*, [536 U.S. 622 (2002)],
> held that a defendant who admits his guilt when he plead
> guilty, is not permitted to have his case reopen[ed] to make
> claims challenging the chain of custody.  As previously
> argued, *Ruiz* should only read to apply to fast track cases
> months before trial.  Additionally, the Delaware Supreme
> Court erroneously held that "*Ruiz* prevents [a defendant] from
> reopening his case to make claims that do not address his
> guilty plea, and involve impeachment evidence that would
> only be relevant at trial." This is incorrect as the decision to
> accept the plea is based in part upon the strength of the
> State's case and would include factoring in information that
> could be used to challenge the State's evidence. Petitioner
> accepting a plea on the eve of trial was based upon the notion
> that the State had provided all *Brady* [*v. Maryland*] information
> that it possessed and was required to disclose in anticipation
> of trial.  When the State did not disclose any *Brady* [*v.*

6

> Maryland] information on the eve of trial, [Petitioner] only then
> decided to accept the plea.  The Delaware Supreme Court's
> holding in effect allows the State to withhold crucial Brady [v.
> Maryland] information from a defendant in the hopes that they
> will accept a plea […].

(D.I. 15-9 at 59-60)  Petitioner argued that "Ruiz should only be read to hold that the

government is not required to disclose impeachment information to a defendant in a fast

track plea agreement setting.  For a plea on the eve of trial or during trial, the normal

requirements of Brady must apply, as Ruiz does not touch upon this issue."  (D.I. 15-9

at 55)

The Superior Court rejected Petitioner's interpretation of Ruiz and his attempt to

distinguish his case from the other Rule 61 OCME evidence mishandling cases.

Relying on the Delaware Supreme Court's decision in Ira Brown v. State, the Superior

Court denied Petitioner's Rule 61 motion as meritless:

> The Supreme Court of Delaware has addressed cases
> involving misconduct at the OCME.  In [Ira] Brown v. State the
> Court held the Constitution "does not require complete
> knowledge of the relevant circumstances, but permits a court
> to accept a guilty plea, with its accompanying waiver of
> various constitutional rights, despite various forms of
> misapprehension under which a defendant might labor."
> Therefore, the State is under no obligation to disclose
> impeachment evidence prior to entering a plea agreement.
> The Court went on to say "Ruiz prevents [the defendant] from
> reopening his case to make claims that do not address his
> guilt, and involve impeachment evidence that would only be
> relevant at trial."  Thus, under the Court's holding in Brown,
> where a defendant admits to his guilt in a plea colloquy, "the
> OCME investigation provides no logical or just basis to upset
> his conviction."
>
> Again and again, [Petitioner] identifies potential impeachment
> evidence he might have used at a trial, occasionally blurring
> the distinction between impeachment and exculpatory
> evidence.  But none of the evidence [Petitioner] has identified
> is exculpatory, and Brown controls here.

7

> [Petitioner] argues that his case should be distinguished from
> *Brown* because his plea was offered on the day of trial.  But a
> careful reading of *Brown* indicates that the defendant's plea
> hearing in that case also took place on the day for which his
> trial was scheduled.  The timing of the plea thus cannot offer
> any ground for distinguishing his case from the one already
> decided by our Supreme Court.    The Court declines
> [Petitioner's] invitation to adopt an interpretation of *Ruiz* that
> is at odds with the binding precedent established in *Brown*.

> [Petitioner] also makes a due process argument.  Although he
> does not ask the Court to vacate his guilty plea, he argues that
> his plea was involuntary under *Brady v. United States*
> because he was unaware of the OCME problem when the
> plea was entered.  As the Supreme Court of Delaware noted
> in *Aricidiacono v. State*, a guilty plea is considered involuntary
> under *Brady* "if it is 'induced by threats (or promises to
> discontinue   improper   harassment),   misrepresentation
> (including unfulfilled or unfulfillable promises), or perhaps by
> promises that are by their nature improper as having no
> proper relationship to the prosecutor's business (e.g. bribes).'"
> As in *Aricidiacono*, [Petitioner] has "submitted no evidence to
> suggest a natural inference that any misconduct at the OCME
> (or lack or knowledge of that conduct) coerced or otherwise
> induced him to falsely plead guilty."

*King*, 2016 WL 6820638, at *1–2 (citations omitted). Petitioner appealed, and the

Delaware Supreme Court affirmed the Superior Court's judgment "on the basis of and

for the reasons stated in its November 16, 2016 Order."  *King*, 2017 WL 2806268, at *1.

Petitioner alleged in his Petition and Opening Memorandum two Claims for relief:

(1) the Delaware state courts erroneously concluded that Petitioner was precluded from

withdrawing his guilty plea made on the day of trial when the State failed to comply with

its *Brady v. Maryland* obligations; and (2) the Delaware state courts erroneously denied

Petitioner's ability to further develop the factual record in relation to his postconviction

claim.  (D.I. 2 at 2; D.I. 15 at 2)

8

### A. Claim One: The Effect of the State's Alleged Violation of *Brady v. Maryland* on Petitioner's Guilty Plea

On the surface, Petitioner's contention in Claim One appears fairly straightforward, namely, that the Delaware state courts erroneously concluded that Petitioner was precluded from withdrawing his guilty plea. (D.I. 2 at 2; D.I. 15 at 2)  The Court, however, has found nothing in the record to indicate that Petitioner formally asked to withdraw his guilty plea during the Rule 61 proceeding, and the Delaware state court decisions do not phrase the issue in Petitioner's Rule 61 proceeding as a request to withdraw his guilty plea.[2]  In addition, Petitioner's presentation of the arguments in support of Claim One in this proceeding reveal that the Claim actually consists of two-prongs.[3]  First, and what the Court identifies as Claim One (A), Petitioner contends that

---

[2]In fact, the final sentence in Petitioner's Amended Rule 61 motion uses the following language: Petitioner's "conviction and sentence must be reversed and remanded for a trial and the State must disclose all Brady information to [Petitioner]."  (D.I. 15-9 at 66)

[3]For instance, the title of Claim One in the Petition and Memorandum in Support is as follows: "The State courts erroneously concluded that Petitioner was precluded from withdrawing his guilty plea made on the day of trial when the State failed to comply with its *Brady v. Maryland* Obligations."  (D.I. 2 at 10; D.I. 15 at 22)  Both documents then present three subarguments to support Claim One: (A) "The State violated *Brady v. Maryland* by failing to provide [Petitioner] with exculpatory and impeachment information regarding the OCME's misconduct which affected the reliability of its work product and the credibility of its employees"; (B) "The State Court erroneously concluded that Petitioner was precluded from withdrawing his guilty plea due to the State's failure to timely provide *Brady* information"; and (C) "The State failed to consider that the State's non-disclosure of *Brady* materials induced Petitioner into pleading guilty."  (D.I. 15 at 2) A more in-depth review of the Petition and Petitioner's supporting memorandum, however, reveals that subarguments (A) and (B) really comprise one subargument, namely, that the state courts erroneously applied *Brady v. Maryland* and *Ruiz* in concluding that the State's failure to timely inform Petitioner about the OCME evidence mishandling scandal did not violate *Brady v. Maryland*, and that subargument (C) presents a separate but related contention, namely, that the alleged *Brady v. Maryland* violation rendered Petitioner's guilty plea involuntary under *Brady v. United States*.  The fact that Petitioner uses this two pronged-argument to support Claim One is more apparent in his Reply to the State's Answer, in which he asserts the following two

9

that the State violated *Brady v. Maryland* by failing to disclose to Petitioner before he entered his guilty plea the information about the OCME evidence mishandling scandal, and that the Delaware state courts unreasonably applied *Brady v. Maryland* and *Ruiz* in holding otherwise. (D.I. 15 at 22-38) Second, and what the Court identifies as Claim One (B), Petitioner contends that the State's *Brady v. Maryland* violation amounted to inducement or coercion, and that the Delaware state courts unreasonably applied *Brady v. United States* and unreasonably determined the facts when holding that the State's *Brady v. Maryland* violation did not render his guilty plea involuntary. (D.I. 15 at 38–41) This two-pronged argument mirrors the argument Petitioner presented in his Rule 61 proceeding[4] which, as previously explained, the Delaware state courts denied as meritless. Therefore, Petitioner will only be entitled to habeas relief if the Delaware state court decisions[5] were either contrary to, or an unreasonable application of, clearly established federal law or, with respect to Claim One (B), constituted an unreasonable

---

counterarguments to the State's opposition to Claim One: (I) "The State's assertions fail to establish that the denial of [Petitioner's] voluntariness claim was not contrary to federal law established through *Brady v. Maryland* and its progeny, nor does it establish that the Delaware courts reasonably applied clearly established federal law to the facts of [Petitioner's] case"; and (II) "The State's assertions fail to establish that that state courts' denial of postconviction relief was not contrary to the federal law established in *Brady v. United States* and its progeny, nor establish that the Delaware courts reasonably applied this clearly established federal law to the facts of [Petitioner's] case." (D.I. 21 at 2)

[4](D.I. 15-9 at 30-66)

[5]The Delaware Supreme Court summarily affirmed the Superior Court's decision "on the basis of and for the reasons stated" in that decision. Therefore, the Court will refer to the Delaware state courts rather than the Delaware Supreme Court. *King*, 2017 WL 2806268, at *1.

determination of the facts based on the evidence adduced in connection with the Rule 61 proceeding.

### 1. Claim One (A): *Brady v. Maryland* and *United States v. Ruiz*

Petitioner contends that the Delaware state courts unreasonably applied *Brady v. Maryland* and *Ruiz* in holding that the State did not violate *Brady v. Maryland* by failing to timely disclose material exculpatory and impeachment materials regarding the OCME evidence mishandling. For the following reasons, the Court rejects Petitioner's argument.

The clearly established federal law governing the State's disclosure requirements to a defendant is articulated in *Brady v. Maryland* and its progeny, *United States v. Ruiz*. Pursuant to *Brady v. Maryland*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady*] evidence ... even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284 (3d Cir. 2016). "To comply with *Brady*, prosecutors must 'learn of any favorable evidence known to the others acting on the government's behalf.'" *Id.* In order to prevail on a *Brady v. Maryland* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently;" and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

In *Ruiz*, the United States Supreme Court specifically held that the Government is not constitutionally required to disclose material impeachment evidence prior to

11

entering a plea agreement with a criminal defendant.  *See Ruiz*, 536 U.S. at 633.  The

*Ruiz* Court explained:

> It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant.  The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case— a matter that the Constitution does not require prosecutors to disclose.

*Ruiz*, 536 U.S. at 629.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the

Delaware state courts correctly identified the *Brady v. Maryland* and *Ruiz* standards

applicable to Claim One (A).  Consequently, the Delaware state court decisions were

not contrary to clearly established federal law.  *See Williams*, 529 U.S. at 406 ("[A] run-

of-the-mill state-court decision applying the correct legal rule from [Supreme Court]

cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s

'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the

Delaware state courts unreasonably applied the *Brady v. Maryland* and *Ruiz* standards

to the facts of Petitioner's case.[6]  Significantly, as recognized by the body of Delaware

caselaw concerning the OCME misconduct scandal, the OCME evidence mishandling

constitutes impeachment evidence that would only be useful if Petitioner had decided to

---

[6]As previously explained, Petitioner contends that the Delaware state courts improperly relied upon *Ira Brown* in denying Claim One.  However, since the *Ira Brown* Court based its denial of Brown's OCME evidence misconduct claim upon *Brady* and *Ruiz,* the proper focus here is whether the Delaware Supreme Court unreasonably applied *Brady v. Maryland* and *Ruiz* in Petitioner's case.

go to trial. *See Ira Brown*, 108 A.3d at 1205-06, n.30 (holding that OCME evidence mishandling investigation constitutes impeachment material in Brown's case and in fact patterns like it); *State v. Miller*, 2017 WL 1969780, at *6 (Del. Super. Ct. May 11, 2017) (stating that all of hundreds of Rule 61 motions asserting similar *Brady v. Maryland* claims argue that State suppressed valuable impeachment evidence when it failed to disclose that drugs submitted to OCME were being tampered with and/or stolen from lab). Since *Ruiz* specifically held that the Government is not constitutionally required to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant, the Delaware state courts reasonably applied clearly established federal law in denying Claim One (A). *See Ruiz*, 536 U.S. at 633.

Petitioner, however, contends that *Ruiz* is inapplicable to his case because it should be interpreted as only applying to "fast track cases months before trial." (D.I. 15 at 33-38) The Court is not persuaded. First, and most importantly, Petitioner has not identified, and the Court has not found, any Supreme Court case limiting the rationale of *Ruiz* to the context of "fast track" plea bargaining. In fact, the Supreme Court recently reaffirmed that "a guilty plea makes [case-related constitutional defects that occurred prior to the entry of the guilty plea] irrelevant to the constitutional validity of the conviction," "[b]ecause the defendant has admitted the charges against him." *Class v. United States*, 138 S.Ct. 798, 805-06 (2018). The absence of any clearly established federal law supporting Petitioner's interpretation provides a sufficient reason for denying relief under § 2254(d)(1).

The Court also is not persuaded by Petitioner's interpretation of *Ruiz*. Although the defendant in *Ruiz* was offered a "fast track" plea bargain, the *Ruiz* Court did not limit

13

its holding to fast track cases. Rather, the *Ruiz* Court framed the issue in broader terms, stating "[w]e must decide whether the Constitution requires preguilty disclosure of impeachment information. We conclude that it does not." *Ruiz*, 536 U.S. at 629. In addition, the *Ruiz* Court did not use limiting language in its holding but instead stated broadly that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id*. at 633. Finally, *Ruiz*'s holding was based primarily on the nature of impeachment evidence and its much greater importance to ensuring a fair trial rather than on ensuring a voluntary guilty plea. *Id*. at 629.

For these reasons, the Court concludes that the Delaware state courts did not unreasonably apply *Brady v. Maryland* and *Ruiz* in holding that Petitioner was precluded from withdrawing his guilty plea despite the State's failure to inform him before he entered his plea about the OCME evidence mishandling scandal.

### 2. Claim One (B): Voluntariness of plea under *Brady v. United States*

Next, Petitioner argues that the Delaware state courts unreasonably applied *Brady v. United States* when denying his argument that the State's failure to disclose the OCME evidence mishandling scandal before he entered his plea rendered his guilty plea involuntary. (D.I. 21 at 13-14) According to Petitioner, the Delaware state courts erred by focusing on his admission of guilt during his plea colloquy instead of applying the "totality-of-the-circumstances analysis set forth in *Brady v. United States*" when holding that the failure to inform him about the OCME evidence mishandling did not induce him to enter a guilty plea. (D.I. 21 at 12)

14

Petitioner presented this argument to the Superior Court in his Rule 61 motion. The Superior Court rejected the argument as meritless, relying on *Aricidiacono* and *Brady v. United States*. *See King*, 2016 WL 6820638, at *1. The Delaware Supreme Court affirmed the Superior Court's holding for the reasons provided in the Superior Court's decision. Therefore, Petitioner's argument that the Delaware state courts improperly rejected his involuntary plea argument will only warrant habeas relief if the Delaware state court decisions were either contrary to, or an unreasonable application of, *Brady v. United States*, or constituted an unreasonable determination of facts based on the evidence adduced in the Rule 61 proceeding.

In *Brady v. United States,* the Supreme Court held that a guilty plea is not rendered invalid merely because it is entered to avoid a harsher sentence. In the Court's words:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Brady v. United States*, 397 U.S. at 755; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (explaining a defendant may challenge a conviction based on a guilty plea on the ground that the plea was not "voluntary and intelligent."); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that the "longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative choices of action open to the defendant."). The Supreme Court further explained that a plea is involuntary if it is induced by "actual or threatened physical harm

15

or by mental coercion overbearing the will of the defendant," or if the defendant is so "gripped" by fear or hope of leniency that he cannot "rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady v. United States*, 397 U.S. at 750  But a plea is not involuntary "whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.* at 751.

"[T]he voluntariness of [a defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. at 749.  Although the Court did not set forth in *Brady v. United States* a comprehensive list of the "relevant circumstances" to be considered when assessing the voluntariness of a plea, the Court specifically noted that a plea is not unintelligent just because later events prove that going to trial may have been a wiser choice:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the

plea rested on a faulty premise.

*Brady v. United States*, 397 U.S. at 756–57.

The Supreme Court reaffirmed this principle in *McMann v. Richardson*, 397 U.S.

759 (1970), where it held that

> the decision to plead guilty before the evidence is in frequently
> involves the making of difficult judgments.  All the pertinent
> facts normally cannot be known unless witnesses are
> examined and cross-examined in court.  Even then the truth
> will often be in dispute.  In the face of unavoidable uncertainty,
> the defendant and his counsel must make their best judgment
> as to the weight of the State's case . . . Waiving trial entails
> the inherent risk that the good-faith evaluations of a
> reasonably competent attorney will turn out to be mistaken
> either as to the facts or as to what a court's judgment might
> be on given facts.

397 U.S. 769-70 (1970).  Thus,

> [t]he rule that a plea must be intelligently made to be valid
> does not require that plea be vulnerable to later attack if the
> defendant did not correctly assess every relevant factor
> entering into his decision.  A defendant is not entitled to
> withdraw his plea merely because he discovers long after the
> plea has been accepted that his calculus misapprehended the
> quality of the State's case.

*Brady v. United States*, 397 U.S. at 757.  In other words, "the Constitution, in respect to

a defendant's awareness of relevant circumstances, does not require **complete**

knowledge of the relevant circumstances, but permits a court to accept a guilty plea . . .

despite various forms of misapprehension under which a defendant might labor." *Ruiz*,

536 U.S. at 630 (emphasis added).

Finally, it is well-settled that a petitioner challenging the voluntary nature of his

plea on habeas review faces a heavy burden.  *See Zilich v. Reid*, 36 F.3d 317, 320 (3d

Cir. 1994).  The "representations of the defendant, his lawyer, and the prosecutor at [a

17

plea] hearing, as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings. Solemn declarations in

open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63,

73–74 (1977). Notably, there is

> no requirement in the Constitution that defendant must be
> permitted to disown his solemn admissions in open court that
> he committed the act with which he is charged simply because
> it later develops that the state would have had a weaker case
> than the defendant had thought or that he maximum penalty
> then assumed applicable has been held inapplicable in
> subsequent judicial decisions.

*Brady v. United States*, 397 U.S. at 757.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the

Delaware state courts in Petitioner's case correctly identified the *Brady v. United States*

standard applicable to Claim One (B), as did the Delaware Supreme Court decision

(*Aricidiacono*) referenced by the Delaware state courts.[7]  Therefore, the Delaware state

courts' denial of the instant involuntary plea argument was not contrary to clearly

established federal law.

The Court must also determine if the Delaware state courts unreasonably applied

*Brady v. United States* to the facts of Petitioner's case when denying Claim One (B).

The instant case is just one in a series of cases concerning the OCME evidence

mishandling that have been filed in the District of Delaware. The District Court, as well

---

[7]The Superior Court in Petitioner's case stated, "As the Supreme Court of Delaware
noted in *Aricidiacono v. State*, a guilty plea is considered involuntary under *Brady* "if it is
'induced by threats (or promises to discontinue improper harassment),
misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by
promises that are by their nature improper as having no proper relationship to the
prosecutor's business (*e.g.* bribes).'" *King*, 2016 WL 6820638, at *1 (quoting *Brady*, 397
U.S. at 755).

as this Court in particular, has already considered and denied as meritless arguments identical to Petitioner's instant argument that the Superior Court unreasonably applied *Brady v. United States* by focusing on the defendant's admission of guilt during the plea colloquy.  In *Simmons v. DeMatteis*, 2019 WL 4572892 (D. Del. Sept. 20, 2019), for example, this Court held that the Delaware state courts' reliance on *Aricidiacono* when denying Simmons involuntary plea/*Brady v. United States* argument demonstrated that the state courts had reasonably applied *Brady v. United States*'  "totality of the circumstances" standard when rejecting Simmons's involuntary plea/*Brady v. United States* claim.  *See Simmons*,  2019 WL at *4 -*10.  The Third Circuit recently declined to grant a certificate of appealability in *Simmons*, opining that

> [j]urists of reason would not dispute the District Court's conclusion that the Delaware Supreme Court's rejection of [Simmons'] claim was not contrary to, nor an unreasonable application of, *Brady v. United States*. [. . .]  Among other things, jurists of reason would reject [Simmons'] contention that the Delaware Supreme Court added a threshold test to the standard in *Brady* [*v. United States*]  and did not consider the relevant circumstances of the plea agreement as required by *Brady* [*v. United States*].

(*See* D.I. 22 in *Simmons v. Coupe*, Civ. A. No. 16-845-CFC)

Since, as previously noted, the Delaware state courts in Petitioner's case relied on *Aricidiacono* when rejecting Petitioner's argument that his lack of knowledge about the OCME misconduct induced him to enter a guilty plea, the Court applies the same reasoning from *Simmons* and concludes that the Delaware state courts in Petitioner's case did not unreasonably apply *Brady v. United States* by focusing on Petitioner's admission of guilt during the plea colloquy as one of the relevant circumstances required by *Brady v. United States* as a basis for denying Claim One (B).  Significantly,

19

Petitioner does not dispute that the drugs seized and tested in his case were not what they were purported to be; he admitted his guilt during the plea colloquy; he does not assert his actual innocence; and he received a benefit by pleading guilty because he was originally charged with four drug charges, three of which were dropped as a result of his plea bargain. (D.I. 16 at 14; D.I. 23 at 9-13)

In addition, contrary to Petitioner's assertion, the Court finds that the Delaware state courts did not unreasonably determine the facts in rejecting Claim One (B). Once again expressing his disagreement with the Delaware state courts' reliance on the Delaware Supreme Court decision *Ira Brown*, Petitioner contends that the "Delaware Courts also failed to recognize the significant factual developments in relation to the OCME's misconduct" that occurred after the Delaware Supreme Court's decision in *Ira Brown*. (D.I. 15 at 37-38) Petitioner highlights as troubling the following factual finding in *Ira Brown*:

> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employee who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

(D.I. 15 at 37) According to Petitioner, the "Delaware Courts also failed to recognize the significant factual developments in relation to the OCME's misconduct" that occurred after the Delaware Supreme Court's decision in *Ira Brown*, and he argues that

> this finding [in *Ira Brown*] no longer holds true as the Forensic Chemist Irshad Bajwa was suspended and later terminated after evidence he certified as cocaine was found to not be any illegal substance. The Delaware Courts were also not aware at the time of its decision in *Ira Brown* how pervasive the

20

> misconduct at the OCME was. More specifically, the Delaware Courts were not aware that the forensic chemist in this case, Patricia Phillips, would be terminated after three reported incidents of evidence mishandling. Nor were the Delaware Courts aware that [OCME forensic chemist] Bipin Mody would be terminated for disregarding OCME policies and procedures and for failing to timely perform drug analyses, information that the DOJ erroneously concluded was not *Brady*. As the Delaware Courts refused to recognize how the factual environment drastically evolved from the time it decided *Ira Brown*, this Court must find that the Delaware Court erred by relying on *Ira Brown* to deny [Petitioner] postconviction relief.

(D.I. 15 at 37-38)

To reiterate, the Delaware state courts relied on two Delaware Supreme Court decisions – *Aricidiacono* and *Ira Brown* – when denying Petitioner's argument that the failure to disclose the OCME misconduct rendered his guilty plea involuntary. In *Aricidiacono*, the Delaware Supreme Court held that "the poor evidence-handling practices at the OCME, however regrettable," did not entitle defendants who had freely admitted their guilt when pleading guilty to relief under Rule 61. *See Aricidiacono*, 125 A.3d at 678-79. The *Aricidiacono* Court found that, even if it were assumed that the conduct at the OCME amounted to egregious government misconduct, "this conduct did not materially affect any of the pleas." *Id.* at 680 n.24. Consistent with *Aricidiacono*, and as noted by Petitioner, the Delaware Supreme Court found in *Ira Brown* that "[t]here is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances they received for testing" or that they had "planted" evidence. *See Ira Brown*, 108 A.3d at 1204-05. By relying on *Ira Brown* and *Aricidiacono*, the Delaware state courts in Petitioner's case implicitly adopted the same

21

factual determination that Petitioner's case was not affected by the overall evidence mishandling at the OCME.

Petitioner, however, complains that Delaware state courts in his case committed the following specific factual errors when relying on *Ira Brown* and *Aricidiacono*: (1) they failed to "assess the OCME employee misconduct or the integrity of the drug evidence in [his] case;" (2) they failed to assess "whether the misconduct might have occurred in [his] case;" (3) they failed to assess "whether the particular OCME employee who handled the drugs in [his] case [was] corrupt;" (4) they "failed to properly consider" the fact that "Forensic Examiner Patricia Phillips'[s] testimony and lab report were essential to the State's case as Ms. Phillips'[s] lab report contained Ms. Phillips'[s] conclusion that substances found on [Petitioner's] person [were] cocaine and marijuana," but "Ms. Phillips'[s] credibility was suspect due to her own misconduct"; and (5) they failed to properly consider the fact that there were discrepancies between "what was seized from [Petitioner] and what was finally analyzed by Ms. Phillips." (D.I. 21 at 14) According to Petitioner, these factual inquiries "would have provided valuable ammunition for perforating" the credibility of Phillips and her work product. *Id.* In essence, Petitioner appears to argue that the Delaware state courts unreasonably determined that the circumstances of his case did not differ sufficiently enough from the circumstances in *Ira Brown* and *Aricidiacono* to find a link between the overall OCME evidence misconduct and Petitioner's decision to enter a guilty plea.

Since Petitioner challenges the factual basis of the Delaware state court decisions, the relevant inquiry is whether those decisions were "based on an unreasonable determination of the facts in light of the evidence presented in the State

22

court proceeding." 28 U.S.C. § 2254(d)(2). When performing this inquiry, the Court must presume that the Delaware state courts' factual findings are correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

After reviewing Petitioner's argument in the context of the entire record, the Court concludes that Petitioner has failed to provide clear and convincing evidence rebutting the Delaware state courts' implicit factual determination that Petitioner failed to distinguish his circumstances from those in *Ira Brown* and *Aricidiacono* sufficiently enough to demonstrate a link between the general OCME evidence mishandling scandal and his case. Although Petitioner contends that "the factual environment [had] drastically evolved from the time [the Delaware Supreme Court] decided *Ira Brown*," (D.I. 15 at 38), Petitioner fails to demonstrate how the alleged "drastic" change affected his case. For instance, the "newly evolved" information regarding the misconduct of chemists Bajwa and Mody is irrelevant because those individuals did not analyze the drugs in Petitioner's case. Petitioner's attempt to create a link between the "suspect" credibility of the forensic chemist who did analyze the drugs in his case—Patricia Phillips—and his case is similarly unavailing, because the existence of such a link is pure speculation. (D.I. 21 at 14) While Petitioner does not identify the cause of Phillips's "suspect credibility," the Court presumes Petitioner is referring to the "three incidents of evidence mishandling leading to [Phillips's] suspension and resignation [that] occurred in 2015." *Miller*, 2017 WL 1969780, at *8. However, since the evidence in Petitioner's case was tested in 2013, (D.I. 20-3 at 20-21), Phillips's alleged misconduct in 2015 does not demonstrate that she engaged in misconduct in Petitioner's case.

In addition, the drugs obtained by the police in Petitioner's case field-tested positive for cocaine and marijuana, thereby supporting the OCME test results that the substances were marijuana and cocaine.  (D.I. 16 at 3; D.I. 20-3 at 19)  As for the discrepancies "between what was seized" and "what was analyzed"—which Petitioner does not explain—the Court presumes Petitioner means the discrepancy between the weight of the drugs found on Petitioner at the time of seizure (7.9 grams of marijuana and 4.1 grams of cocaine) (D.I. 15-2 at 30) and the different weights attributed to all of the drugs seized from Petitioner and one of his co-conspirators that were included in the OCME report  (D.I. 15-2 at 37-38).  However, such discrepancies constitute impeachment evidence, not exculpatory evidence, and are not indicative of actual innocence.  *See Word v. Carroll*, 2004 WL 1941342, at \*4 (D. Del. Aug. 31, 2004).  Finally, Petitioner's conviction for drug dealing (16 Del. Code § 4754) did not depend upon the weight of the controlled substances, nor did the offenses for which he was indicted (drug dealing (16 Del. Code § 4754), possession of marijuana (16 Del. Code § 4764(b)), third degree conspiracy (11 Del. Code § 511), and possession of drug paraphernalia (16 Del. Code § 4771(a)) (D.I. 15-2 at 32-36).  After considering these circumstances together with Petitioner's failure to assert his factual innocence during the plea colloquy or in this proceeding, the Court concludes that the Delaware state courts did not unreasonably determine the facts by holding that the existence of overall misconduct at the OCME was insufficient to establish that Petitioner's case was tainted by the same misconduct.

As explained by the Superior Court in *State v. Irwin*, another Delaware post-conviction case concerning the OCME misconduct cited by the

24

*Aricidiacono* Court:[8]

> To the extent that there are discrepancies between the drugs seized from a defendant and those tested by the lab, the individual possibly responsible for that conduct has not been identified.  [] [A]s best the Court can ascertain, and the parties have not provided evidence to the contrary, none of the cases in other jurisdictions that have led to the investigation of a particular crime lab have ever resulted in all of the evidence being found unreliable and inadmissible simply because that evidence was stored or tested at the lab that has been compromised.

> \*                    \*                    \*

> There is no evidence to date to suggest that proper testing of drugs submitted did not occur, or that the chemists were submitting false reports, or that critical evidence was withheld by the lab, or that there was any misconduct by the police in violation of a defendant's rights.  When the smoke clears, what we have is a lab that suffered from systematic failures in protocol resulting in evidence being stolen, for either sale or personal consumption, and in some instances replaced with other drugs.  While the defendants urge this Court to find any evidence stored at the OCME drug lab is ipso facto unreliable due to a lapse in management and protocol, the Court finds that such a blanket ruling is inappropriate.

*State v. Irwin*, 2014 WL 6734821, at *7, *9 (Del. Super. Ct. Nov. 17, 2014).

In short, the OCME evidence mishandling scandal constitutes impeachment evidence that cannot provide a basis for rendering a defendant's counseled decision to enter a guilty plea involuntary, especially when that defendant participated in a plea colloquy in open court, freely acknowledged his guilt, and has not asserted his factual innocence.  Although knowledge of the OCME evidence mishandling scandal may have

---

[8]Citing *Irwin*, the *Aricidiacono* Court stated that, "[i]n our prior decisions, we found that when defendants freely admitted their guilt by admitting that they possessed illegal narcotics, their lack of knowledge that the OCME's evidence-handling practices were seriously flawed and that some OCME employees had engaged in malfeasance, did not invalidate their pleas." *Aricidiacono*, 125 A.3d at 678-78.

provided Petitioner with more bargaining leverage, it cannot be said that the lack of that knowledge rendered his guilty plea involuntary.

For these reasons, the Court concludes that the Delaware Supreme Court did not unreasonably determine the facts or unreasonably apply *Brady v. United States* to the facts of Petitioner's case when it held that Petitioner's guilty plea was not rendered involuntary due to his lack of knowledge about the OCME evidence mishandling scandal. Accordingly, the Court will deny Claim One (B) for failing to satisfy the standards set forth in § 2254(d)(1) and (d)(2).

### 3. Claim Two: The Superior Court Prevented Petitioner From Developing Factual Record/Request for Evidentiary Hearing

Although Petitioner requested an evidentiary hearing in his Rule 61 proceeding, the Superior Court denied the Rule 61 motion without holding an evidentiary and without addressing the request. Petitioner alleges in Claim Two of his Petition that

> [i]n the present case, [Petitioner] was denied all ability to further develop the factual record through compelled testimony. Specifically, the State Court denied [Petitioner's] request for an evidentiary hearing to question various members of Delaware's Attorney General Office and former employees of the OCME about their communications with one another and their knowledge of the problems at the OCME. This information was critical to the determination of the true scope and magnitude of the State's *Brady* violation. The State Court also denied [Petitioner] the ability to investigate and create a factual record of the chain of custody of the alleged drug evidence in this case as the State did not provide nor was the State ordered to produce the necessary chain of custody documents. Lastly, the State Court denied [Petitioner] the ability to investigate and compel testimony in relation to the reported misconduct of Patricia Phillips, who was responsible for analyzing the alleged drug evidence in this case.
>
> As the State Court denied [Petitioner] the ability to fully investigate and to have a full and fair hearing in relation to his

> *Brady* claim, the State Court did not provide [Petitioner] with adequate factfinding procedures to create an adequate factual record to rule upon [Petitioner's] *Brady* claim. Thus, this Court must hold an evidentiary hearing to allow for a complete and accurate factual record to be created in relation to [Petitioner's] claim.

(D.I. 2 at 21)  Petitioner argues in his memorandum filed in support of the Petition that

> [a]lthough Due Process required the State Courts to hold an evidentiary hearing to allow [Petitioner] to further develop the factual record in relation to his postconviction claim, the State Courts concluded that no further expansion of the factual record was necessary and erroneously denied [Petitioner's] request for an evidentiary hearing.  As such, [Petitioner] respectfully requests that this Court hold an evidentiary hearing to allow [Petitioner] to present witnesses and evidence concerning his *Brady* claim.

(D.I. 15 at 42)  Based on the foregoing, it appears that Claim Two alleges both a due process violation as a ground for relief and a request for an evidentiary hearing.  For the following reasons, the Court concludes that neither assertion is availing.

### 1. Due process argument

It is not the province of a federal habeas court to determine whether state courts have properly applied their own evidentiary rules.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, the only question for a habeas court is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates Due Process." *Id.* at 72.

Here, Petitioner has not shown that the Superior Court's failure to conduct an evidentiary hearing for his *Brady v. Maryland* claim denied him rights guaranteed by the due process clause.  Delaware Superior Court Criminal Rule 61(h) grants the Superior Court discretion in deciding whether to conduct an evidentiary hearing in connection with a Rule 61 post-conviction relief motion.  *See* Del. Super. Ct. R. 61(h)(1),(3).  The

27

Superior Court does not abuse its discretion in denying an evidentiary hearing request if the record is sufficient to establish that the petitioner's claims lack merit. *See Johnson v. State*, 129 A.3d 882 (Table), 2015 WL 8528889, at *4 (Del. Dec. 10, 2015).

In his Rule 61 proceeding, Petitioner asked the Delaware Superior Court to conduct an evidentiary "in order to question members of the DOJ and former employees of the OCME about their knowledge of the problems at the OCME and whether any communications took place during which the problems at the OCME were discussed." (D.I. 15 at 43) Petitioner also sought to create a "factual record of the chain of custody of the alleged drug evidence, [focusing on] the clear discrepancies in the reported weights of the marijuana and cocaine." (*Id.*) However, the Superior Court had before it the transcript of Petitioner's plea colloquy, the Rule 61 affidavit from Petitioner's defense counsel, the information Petitioner's post-conviction counsel collected regarding the OCME evidence mishandling scandal during his independent investigation for Petitioner's Rule 61 motion (D.I. 15-9 at 24-26; D.I. 15-11), and the formal results of the Delaware Department of Justice's investigation into the OCME evidence mishandling scandal, all of which provided a sufficient basis for the Superior Court to decide Petitioner's Rule 61 motion. *See Pennewell v. State*, 884 A.2d 512 (Table), 2005 WL 578444, at * 2 (Del. Jan. 26, 2005).

Permitting Petitioner to present additional impeachment evidence or further explore issues he waived by virtue of his 2013 guilty plea would not have aided the Superior Court in ruling on Petitioner's *Brady* claim. For instance, asking senior members of the Attorney General's Office to testify about their knowledge of OCME questions would have added nothing to Petitioner's Rule 61 motion. Petitioner pled

guilty on June 4, 2013, yet the discovery of the OCME discrepancies did not occur until January 14, 2014.

Likewise, there was no need for an evidentiary hearing to trace the chain of custody of Petitioner's cocaine evidence, because Petitioner waived the right to pursue any possible suppression motion on that basis when he pled guilty in 2013 and accepted the benefits of the State's plea offer. By pleading guilty, Petitioner also waived his right to attack the validity of chemist Patricia Phillips's testing of the suspected contraband in his case. The relevance of attempting to question Phillips about her misconduct (*i.e.*, her role in the Zakuon Binaird drug prosecution) in a completely unrelated case that occurred after Petitioner entered his guilty plea is not apparent.

Finally, Petitioner's catchall argument that an evidentiary hearing was needed to create a complete factual record for his *Brady* claim fails for the same reason— Petitioner waived the right to learn about *Brady* impeachment evidence when he pled guilty in June 2013. At the June 4, 2013 Superior Court guilty plea colloquy, Petitioner was specifically asked if he admitted his guilt to the cocaine drug dealing charge, and he answered "Yes." (D.I. 15-2 at 42) As previously explained, Petitioner is bound by the admissions he made during his 2013 guilty plea colloquy. *See supra* at Section III.A.2; *see also Blackledge*, 431 U.S. at 73–74. Since he is bound by his prior incriminatory admissions, Petitioner had no right to an evidentiary hearing to explore further subjects he waived by virtue of his June 4, 2013 guilty plea.

Thus, to the extent Claim Two asserts that the Delaware state courts violated Petitioner's due process rights by denying his Rule 61 motion without holding an evidentiary hearing, the Court will deny the argument as meritless.

### 2.  Request for an evidentiary hearing in this proceeding

A habeas petitioner is not entitled to an evidentiary hearing in most cases. The Supreme Court has explained that "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011). Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
>> (A)  the claim relies on –
>>
>>> (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S.465, 468 (2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the

United States District Courts, 28 U.S.C. foll. § 2254. When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro*, 550 U.S. at 474. An evidentiary hearing is not necessary if the issues can be resolved by reference to the record developed in the state courts. *Id*.

The Court has determined that Petitioner's claims are meritless under § 2254(d)(1) and (2), and Petitioner's assertions do not demonstrate how a hearing would advance his arguments. Therefore, the Court will deny Petitioner's request for an evidentiary hearing.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.     CONCLUSION

For the reasons discussed above, the Court will deny Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254.

The Court will enter an Order consistent with this Memorandum Opinion.